Another point of the defense, strongly insisted upon at the hearing, turns rather upon the form of the action. This is an action for money had and received, which, it is argued, is a strictly equitable action, and lies only when a party has received money, which, ex æquo et bono, he ought to refund; that when a party is, by the general principles of equity and good conscience, entitled to retain the money, it cannot be recovered in this form of action, though the party might not have been able, upon the strict principles of law, to prevail in a direct suit for it. Now it is said that this money was paid upon a contract, or quasi contract, between the parties; that the plaintiffs, by the law of 1813, promised to the owners of any duly qualified fishing vessel, that should be employed in the fisheries during four months of the fishing season, a certain sum of money; that the bounty constitutes one of the substantial inducements to the fishermen to engage in the business; that the object of the law is, to encourage the fisheries, as a nursery of seamen, for the general interest of the country, and to promote the navigating interest, by furnishing employment for American shipping; that this vessel, being American built and owned, and having been actually employed the time required, by American seamen, the public policy and objects of the law are satisfied. The terms of the contract having been substantially complied with on the part of the defendants, equity, it is said, will relieve them from an inadvertent omission to comply with conditions, that are merely formal and do not enter into the essence of the consideration.

The first difficulty, which this argument has to encounter, is that it assumes as a fact, that this vessel possessed all the intrinsic qualities which entitled her to be enrolled as an American vessel. This may be true, but it is a fact not found by the jury, and cannot be presumed by the court. The question is, what judgment shall be rendered on this verdict; and upon this question the court can look to no other facts, than what are apparent upon its face. If the fact, then, were as the argument assumes it to be, it ought to have been specially found by the jury. But supposing this difficulty overcome, it would not, in my opinion, relieve the defendant's case. If the construction which has been given to the law is correct, that is, if the oath of the owner is an indispensable prerequisite to the validity of the enrollment, then no bounty was due. A vessel with papers which are void, is like a vessel without papers. She is entitled to none of the privileges of an American ship, wherever she may have been built, or however owned and navigated. In the eye of the law she is considered as a foreign vessel, and can claim only the privileges of a foreign vessel. And such a vessel can, under no circumstances, entitle herself to the fishing bounty. The payment was, therefore, clearly made under a mistake, and

the action for money had and received is the appropriate action to recover back money so paid. It may, however, be objected, that if it was paid by mistake, it was a mistake of law and not of fact; and that money paid under a mistake of law, merely, is not subject to repetition. The principle, when stated in general terms, and as a universal proposition, is not, perhaps, entirely free from difficulty. In the civil law, opinions of great authority are ranged on opposite sides of the question. The framers of the French code, with all the authorities of the civilians before them, decided against the principle, and allow money paid under a mistake of law to be recovered, when the payment is supported by no moral or honorary obligation, and can be ascribed to no other cause but a mistake by the party of his legal obligation. Code Civile, 1377; Toullier, Code Civile Francais, vol. 6, No. 75; Ib. vol. 11, No. 63. In the common law, the authorities are not entirely agreed, though the preponderance of authority is against the recovery back of money in such a case. 1 Story, Eq. 121, note 2. But however it may be when the money is paid by the supposed debtor, no case, that I am aware of, has gone so far as to decide that an unauthorized payment by an agent, from an erroneous opinion of the legal obligation of his principal, shall be binding on the principal, and that he cannot recover back money thus unduly paid. See Story, Ag. § 435; Elliot v. Swartwout, 10 Pet. [35 U. S.] 153.

Upon the whole, my opinion is, that the enrollment of the vessel by the officer, without the oath of one of the owners previously taken and subscribed in conformity with the directions of the act of December 31, 1792 (section 4), was void, and did not confer on the vessel the privileges of a vessel of the United States, and consequently she could not be entitled to the fishing bounty; and that the bounty, having been improvidently paid, may be recovered back by the plaintiffs, in an action for money had and received. Judgment must, therefore, be entered for the plaintiffs for the sum found by the jury. This view of the case being decisive, renders it unnecessary to consider the other question arising on the verdict.

---

## Case No. 14,533.

UNITED STATES v. BARTON.

[1 Cranch, C. C. 132.][1]

Circuit Court, District of Columbia. July Term, 1803.

**WITNESS—COMPETENCY—MANUMITTED SLAVES.**

Manumitted slaves are good witnesses for or against a free mulatto in Washington county.

[Cited in U. S v. Mullany, Case No. 15,832.]

Indictment for stealing a handkerchief. Upon the prisoner being brought to the bar, he appeared to be a mulatto.

[1] [Reported by Hon. William Cranch, Chief Judge.]

Two black witnesses, manumitted, were produced by the United States. Objection overruled and witnesses admitted, after reading the acts of assembly of Maryland, 1717, c. 13, and 1796, c. 77. ·

Barton was indicted as a freeman.

## Case No. 14,534.

### UNITED STATES v. BARTON.

[Gilp. 439.] [1]

District Court, E. D. Pennsylvania. Nov. 29, 1833.

PERJURY—OATH TAKEN BY DEPUTY COLLECTOR—AUTHORITY TO TAKE.

1. Where an oath, required to be administered by a collector of the customs, is falsely taken before a legal deputy of the collector, acting under the provisions of, and in the cases required by the act of March 2, 1799 [1 Stat. 644], it may be sufficient ground for an indictment for perjury.

[Cited in Spring v. Russell, Case No. 13,261.]

2. Under the provisions of the act of March 3, 1817 [3 Stat. 396], the deputy collector is not a mere agent, but is a permanent officer of the customs, and may exercise and perform the functions, powers and duties of the collector.

[Cited in Schmaire v. Maxwell, Case No. 12,460; Falleck v. Barney, Id. 4,625; Platt v. Beach, Id. 11,215; Fifty Thousand Cigars, Id. 4,782; Chadwick v. U. S., 3 Fed. 753; Frelinghuysen v. Baldwin, 12 Fed. 397.]

3. Where in acts subsequent to that of March 3, 1817, the collector of the customs may administer an oath or perform any other act, it was unnecessary to authorise the deputy collector, for that follows of course.

On the 13th November, 1833, a warrant was issued by Judge HOPKINSON for the arrest of Henry Barton, charged on oath with swearing falsely, in a case where an oath was required from him, as the consignee of certain goods, wares and merchandise imported into the port of Philadelphia from a foreign place. On the 29th November, the defendant was brought up for hearing, and the following facts were given in evidence. On the 9th July, 1832, the ship Arab, Capt. Ball, arrived at this port, having on board, among other things, two casks of hardware, consigned to the defendant. On the 18th August following, he entered these goods at the custom house, and at the time of entry produced an invoice of them, which was marked at the time by the appraisers, and identified on this hearing. Annexed to the entry was the following oath of the defendant, made pursuant to the provisions of the fourth section of the act of 1st March, 1823. "I, Henry Barton, do solemnly and truly swear, that the entry now delivered by me to the collector of Philadelphia, contains a just and true account of all the goods, wares and merchandise imported by or consigned to me, in the ship Arab, whereof Ball is master, from Liverpool; that the invoice which I now produce contains a just and faithful account of the actual cost of the said goods, wares and merchandise, of all charges thereon, including charges of purchasing, carriages, bleaching, drying, dressing, putting up, and no other discount, drawback or bounty but such as has been actually allowed on the same; and that I do not know nor believe in the existence of any invoice or bill of lading other than those now produced by me, and that they are in the state in which I actually received them. And I do further solemnly and truly swear, that I have not, in the said entry or invoice, concealed or suppressed any thing whereby the United States may be defrauded of any part of the duty lawfully due on the said goods, wares and merchandise; and that if, at any time hereafter, I discover any error in the said invoice, or in the account now produced of the said goods, wares and merchandise, or receive any other invoice of the same, I will immediately make the same known to the collector of this district. So help me God. (Signed) Henry Barton. Sworn this 18th August, 1832, before me, J. K., Dy. Collector." Mr. John Kern, the deputy collector of the port of Philadelphia, testified, that this oath was administered by him to the defendant at the custom house, at the time of entry, and marked by him with his initials at the same time. Evidence was then produced, on the part of the United States, to show that the invoice, exhibited by the defendant and left at the custom house, was not in fact the original invoice received with the goods, nor one containing a just and faithful account of their actual cost; that it was made up here, after the arrival of the goods, by a person in the employment, and with the knowledge of the defendant; and that although the list of the articles was copied from the original received from Liverpool, yet the prices annexed were considerably altered.

Mr. Meredith, for defendant.

Reserving for another stage of this case, all remarks on the sufficiency of the testimony and the truth of the allegations, there is yet a fatal objection to these proceedings against the defendant. On legal grounds, he cannot be held to bail to answer this charge, for no evidence has been given of an offence punishable by the statutes of the United States. It is unnecessary to say that Henry Barton cannot be prosecuted here for perjury at common law; an indictment against him can only be sustained, if he has violated the provisions of an act of congress. This, however, he has not done. The fourth section of the act of March 1, 1823 [3 Story's Laws, 1882; 3 Stat. 730], provides, "that in all cases where goods, wares or merchandise shall have been imported into the United States, and shall be entered by invoice, one of the following oaths, according to the nature of the case, shall be administered by the collector of the port, at the time of entry, to the owner, importer, consignee or agent, in lieu of the oath now prescribed by law in such case." The form of an oath, similar to that taken by the